**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VILLANOVA UNIVERSITY<br>800 Lancaster Avenue<br>Villanova, PA 19085<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>BISK EDUCATION, INC.<br>9417 Princess Palm Avenue<br>Tampa, FL 33619<br><br>　　　　　　　　Defendant. | Case No. |

## CIVIL ACTION COMPLAINT

Plaintiff Villanova University ("Villanova" or the "University"), by and through its undersigned attorneys, brings this action against Defendant Bisk Education, Inc. ("Bisk," and together with Villanova, the "Parties") and alleges as follows:

## INTRODUCTION

1.　　　Villanova is a premier institution of higher education founded by the Order of Saint Augustine in 1842 in Villanova, Pennsylvania.　Villanova provides to its students a comprehensive education rooted in the liberal arts; a shared commitment to the Augustinian ideals of truth, unity, and love; and a community dedicated to service to others.

2.　　　As part of its educational mission, Villanova offers open enrollment online non-credit courses and programs and certification courses that provide students specific skill sets to help them achieve their professional goals.　Villanova offers online programs and courses relevant to various industries and careers, including, but not limited to, Project Management, Six Sigma, Contract Management, and Cybersecurity.

3.      Prospective students and those who enroll in Villanova's online programs and courses recognize the value inherent in obtaining a professional certificate or certification from Villanova, given Villanova's premier reputation as an educational institution.

4.      Bisk is an online program management ("OPM") organization that purports to "partner with institutions to deliver exceptional online education."[1]  Bisk holds itself out as a "trusted leader in education solutions" that "provide[s] the resources, expertise and technology to help institutions grow and students thrive."[2]

5.      On June 9, 2005, Villanova and Bisk entered into an agreement wherein Villanova engaged Bisk to coordinate and manage essentially all administrative aspects of certain of its online non-credit courses, programs and certification courses (the "Program"), allowing Villanova to concentrate on the Program's academics and educating students.  The Parties amended and extended their June 9, 2005 agreement (with and including all amendments thereto, the "Agreement") on multiple occasions.

6.      Villanova, as an academic institution, is responsible for all academic aspects of the development and delivery of the Program including, but not limited to, providing the academic content and faculty for course development and instruction, educational policies, conferring certificates, branding, and Program oversight.

7.      The Agreement provides that Bisk is responsible for the Program's administrative functions, including marketing development and execution, prospective student recruitment and enrollment, instructional design, student and prospective student communications, registration, billing, student records, and general administration of the Program.

---

[1] *See* https://www.bisk.com/ (last visited May 9, 2023).

[2] *See* https://www.bisk.com/for-universities/ (last visited May 9, 2023).

8.      In exchange for operating and managing the Program's administrative functions, Bisk receives 70% of the Program's revenue.

9.      In recent years, however, Bisk has failed to meet its obligations under the Agreement.  Its breaches are numerous and pervasive.

10.     Bisk has substantially failed to market the Program consistent with industry standards, thus, breaching its contractual obligation to use "commercially reasonable marketing efforts to, develop, promote, market and sell" the Program.

11.     Bisk's breaches of its marketing obligation are replete and have damaged the Program.  For example, Bisk has failed to provide an effective, consistent, business-to-business (B2B) marketing plan.  In fact, for years, Bisk failed to provide any B2B marketing strategy—an essential element of any certificate program marketing plan as corporations are a key source of potential students.  Bisk has failed to deploy a fully functioning e-commerce platform for the Program that meets the needs of students and the marketplace.  Bisk grossly mishandled the Program website, inexcusably damaging the Program's search engine optimization status, which took years to develop, and forfeiting Villanova's internet presence to competing Programs.  Bisk further has failed to provide any consistent, long-term, viable plans for marketing the Program. To the extent Bisk does propose marketing tactics, they lack coherence and are unsupported by competent research.  Bisk regularly presents ideas and then fails to follow through or reverses course once Villanova has dedicated resources to the proposal.  Upon information and belief, Bisk also has curtailed the amount it spends to market the Program in recent years.

12.     Bisk has failed to maintain accurate, reliable, and reportable historical financial information and other Program information in violation of its obligation under the Agreement for billing, recordkeeping, and reporting.  Bisk failed to maintain financial and other enrollment data

and, therefore, is unable to provide Villanova with financial reports, even at a summary level, prior to the second half of 2017.

13. Bisk has failed to provide Villanova a consistent team capable of fulfilling Bisk's obligations under the Agreement, including marketing, administration, finance and accounting, and student recruitment and interaction. Bisk's failure to provide a team capable of fulfilling its obligations defeats the very purpose of the agreement and deprives Villanova of the benefit of its bargain.

14. Bisk's leadership, marketing, and accounting teams, as well as other Bisk personnel responsible for the Program, effectively have been revolving doors. The result is a Program left to languish with no strategic direction. The excessive turnover prevents Bisk from fulfilling its administrative obligations in a competent manner, consistent with reasonable industry standards. Responsibility for key administrative functions, for addressing issues and action items, and for tangible projects evaporates, leading to significant delays and incomplete deliverables—all of which cripples the Program and its ability to compete in the market.

15. Bisk has failed to adequately train, supervise, and retain its enrollment representatives responsible for interacting with prospective and current Program students, thus breaching its obligations under the Agreement to communicate and register students. Not only has Bisk drastically reduced the number of Program-dedicated enrollment representatives, but its representatives also regularly make careless errors and engage in unprofessional conduct that harms Villanova's brand and negatively impacts enrollments. For example, notwithstanding multiple complaints by Villanova, students and prospective students, Bisk's enrollment representation have used vulgar and unprofessional language; demeaned the educational value of

4

Program courses; and made unsolicited political related comments during calls with prospective students.

16.    The Agreement further requires Bisk "to make a substantial and continuing individual investment in the development, marketing and support of the Program."  As reflected by the above failures and breaches, Bisk has done the opposite—decreasing its investment in the Program over time, shirking its obligations under the Agreement, all the while collecting 70% of Program revenue.  Indeed, contrary to the claims on its website, Bisk is more concerned with its bottom line than with "partner[ing] with institutions to deliver exceptional online education."[3]

17.    Individually, and certainly collectively, Bisk's breaches constitute a failure to perform a substantial part of the contract, defeat the Agreement's purpose, and deprive Villanova of the benefit of the Agreement.  Bisk, therefore, is in material breach of the Agreement.

18.    Bisk's failures and breaches have harmed the Program and Villanova.  Program enrollment has declined significantly, causing millions in lost revenue that Villanova could have invested back into the Program, its students, and its educational mission.  Bisk's inappropriate and wrongful interactions with students and prospective students have harmed the Program's and Villanova's reputation and brand in the marketplace.  Indeed, Villanova regularly receives complaints from individuals about the lack of professionalism and competence of Bisk and lamenting its association with the University.

19.    Bisk's breaches of the Agreement also impose additional costs on Villanova. Villanova must devote significant time and resources to address and mitigate Bisk's failures to ensure that critical administrative tasks are completed, errors are corrected, and that its students

---

[3] *See* https://www.bisk.com/ (last visited May 9, 2023).

receive a premier educational experience notwithstanding Bisk's failure to meet its obligations under the Agreement.

20.     Villanova provided Bisk a detailed notice of its breaches, and Bisk has refused to even acknowledge its breaches, let alone make any effort to cure or to indemnify Villanova for its losses as required by the Agreement.  Accordingly, Villanova is left no choice but to bring this action seeking damages and a declaratory judgment that Bisk has materially breached the Agreement, triggering Villanova's contractual right to terminate the Agreement.

## PARTIES

21.     Plaintiff Villanova University is an institution of higher education approved by the Pennsylvania Department of Education and accredited by the Commission on Secondary Schools Middle States Association of Colleges and Schools, the regional accrediting body recognized by the United States Department of Education.  Villanova is a Pennsylvania 501(c)(3) organization pursuant to the Internal Revenue Code of 1986 as amended, having a principal place of business at 800 Lancaster Ave., Villanova, PA 19085.

22.     Upon information and belief, Defendant Bisk Education, Inc. is a for-profit corporation organized and existing under the laws of the State of Florida, having a principal place of business at 9417 Princess Palm Ave., Tampa, Florida 33619.  Bisk develops alternative and distance learning methods for continuing education, post-secondary education and other disciplines.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a Pennsylvania not-for-profit corporation and a Florida corporation, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

24.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(3), in that Defendant has done business in and is subject to personal jurisdiction in this District with respect to this action.

25.     Venue is also proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

## THE AGREEMENT BETWEEN THE PARTIES

26.     On June 9, 2005, Villanova and Bisk entered into the Agreement wherein Villanova engaged Bisk to coordinate and manage essentially all administrative aspects of the Program, allowing Villanova to concentrate on the Program's academics and educating students.  The Parties amended and extended the Agreement on multiple occasions.

27.     The Agreement defines the responsibilities, rights, and obligations of each Party.

28.     Pursuant to the Agreement, Villanova is responsible for providing and approving academic content, faculty, and certificates for successful completion of the Program.

29.     The Agreement imposes on Bisk the obligation to operate and manage essentially all administrative aspects of the Program.  The Agreement entitles Bisk to 70% of the Program's revenues as compensation for performing its obligations.

30.     The Agreement requires Bisk, among other things, to create and distribute all marketing and promotional materials (Section 2.8), communicate with prospective students and manage student enrollment (Section 2.9), bill and collect tuition and relevant student charges (Section 2.11), and make a substantial and continuing investment in the Program (Section 4.4).

31.     Specifically, Section 2.8 of the Agreement provides in relevant part:

> Bisk shall undertake commercially reasonable marketing efforts to, develop, promote, market and sell the Programs in accordance with the terms and conditions of the Brand Guidelines and the Marketing Handbook.

7

32.     Section 2.9 of the Agreement provides in relevant part:

Bisk shall be responsible for communications with prospective students.  Bisk shall be responsible for registering the students into the PLMS [proprietary learning management system].

33.     Section 2.11 of the Agreement provides in relevant part:

Bisk shall be responsible for billing and collecting all tuition and other charges and fees relating to the Program.

Section 3.1 of the Agreement requires that Bisk then pay Villanova its share of the collected revenue.

34.     Section 4.3 of the Agreement provides:

In the event of any litigation or judicial action arising out of or related to this agreement, the prevailing party in any such litigation or judicial action shall be entitled to recover all costs, expenses, including attorneys fees before, during and after trial, on appeal, or in bankruptcy administrative or arbitration proceedings, pertaining to such litigation or judicial action from the non-prevailing party.

35.     Section 4.4 of the Agreement provides in relevant part:

For the purposes of clarification, it is the parties understanding that Bisk shall make a substantial and continuing individual investment in the development, marketing, and support of the Program during the Term….

36.     Additionally, Section 5.2(e) of the Agreement provides in relevant part:

This Agreement may be terminated by either party upon a material breach of the Agreement by the other party, provided, however, that the non-breaching party will provide the breaching party with a written notice of default, stating any remedies it intends to seek if such default is not cured, and provided, further, that on receipt of such notice, the breaching party will have thirty (30) days to cure the default.  Upon such termination, or upon termination by mutual consent or by a court order, the parties will follow termination procedures in Sections 5.2(b), 5.2(c).  Material breach is defined as a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach of contract as substantially defeats its purpose.

8

37.     Section 8.1(b) of the Agreement provides:

[I]ndemnify and hold Villanova harmless from and against any loss, damage or expense (including without limitation, reasonable fees of attorneys and legal assistants including before, during and after trial, on appeal, or in bankruptcy, administrative or arbitration proceedings) suffered by either party resulting from (a) any material breach by Bisk of this agreement; (b) any inaccuracy in or breach of any of the representations, warranties or covenants made by Bisk to this agreement; (c) any personal injury or property damage claims, including claims of misrepresentation associated with any Program, based on the alleged acts or omissions of Bisk or its employees, officers, contractors or agents, or (d) any claims that Bisk's intellectual property infringes on any intellectual property rights of any third party.

38.     Finally, Section 8.4 of the Agreement provides:

Villanova and Bisk's obligation to indemnify hereunder shall include the reasonable costs of investigating or defending any such claim, contract, obligation, litigation, or proceeding, and shall include the loss, damage, or expense, including reasonable counsel fees (including charges for paralegals, before, during, and after trial, on appeal, or in bankruptcy, arbitration or administrative proceedings), incurred in connection therewith.

39.     The Agreement's fundamental purpose is that Bisk will operate and manage all fundamental administrative aspects of the Program, allowing Villanova to focus on developing and providing its students with first-rate educational content and experiences.

## BISK'S BREACHES OF THE AGREEMENT

40.     Bisk consistently and fundamentally has failed to fulfill its obligations under the Agreement.  Its breaches are numerous and replete, spanning various critical administrative aspects of the Program—from marketing to accounting to student engagement to record keeping.  Bisk's failures, which it has refused to correct, has substantially defeated the Agreement's fundamental purpose.

A. **Bisk's Breached the Agreement by Failing to Make Commercially Reasonable Marketing Efforts**

41.     Bisk has failed to make "commercially reasonable marketing efforts to, develop, promote, market and sell the Programs" and, therefore, has breached Section 2.8(f) of the Agreement.

42.     In addition, Bisk's failures to make the necessary investments to market the Program adequately and consistent with industry standards breaches its obligation under Section 4.4 of the Agreement to "make a substantial and continuing individual investment in the development, marketing and support of the Program during the Term."

43.     Bisk continually has failed to implement any consistent or coherent marketing strategy—the very opposite of making a substantial and continuing investment.  Indeed, Bisk has failed to perform at all levels throughout the prospective student marketing funnel, from generating leads to converting accepted individuals into students.  Bisk's breaches have caused Villanova lost enrollments and damaged the Program and the brand.

44.     Bisk's failure to invest in marketing and to use commercially reasonable efforts to market the Program are replete.

1.     **Bisk's Failure to Deliver a Business-to-Business Marketing Strategy**

45.     Bisk has failed to provide a consistent, coherent, and effective B2B marketing plan, and for years, Bisk failed to employ any B2B marketing strategy at all.  The B2B marketing channel is an essential element of a certificate program marketing plan as corporate employees are a key source of potential students.

46.     Prior to February 2020, Bisk had a national corporate sales team focused on marketing the Program to corporations.  Bisk's corporate sales team sought to execute letters of

intent with corporations, offering Program discounts in exchange for the corporations promoting the Program internally to its employees.

47.     Bisk's corporate sales team, however, failed to generate significant enrollments. Despite numerous requests, Bisk failed to provide Villanova with any analysis of Bisk's B2B marketing efforts, preventing Villanova from assessing Bisk's strategy or determining how to improve results.

48.     Implicitly recognizing the failure of its B2B marketing strategy, in February 2020, Bisk dismantled its corporate sales team.

49.     Given the importance of the B2B marketing channel to enrollments, Villanova repeatedly requested that Bisk provide a plan for this void in its marketing plan.  For months, however, Bisk failed to provide any meaningful or concrete response.

50.     In October 2020, eight months later, Bisk finally announced that it planned to re-launch a B2B marketing plan but was unable to provide Villanova with the details of its new strategy.  At the time, Bisk's Managing Director candidly acknowledged that Bisk previously had never had a true B2B marketing strategy.

51.     In June 2021, 16 months after Bisk dismantled its corporate sales team, Bisk remained unable to articulate a B2B marketing strategy, despite its multiple claims that the strategy would be a key growth initiative for the Program.

52.     In November 2021, 21 months after Bisk dismantled its corporate sales team, Bisk finally presented an outline of its proposed new B2B marketing strategy—Bisk Amplified.  The Bisk Amplified strategy; however, was not fully developed, had several holes on its face, and was not planned for launch until March/April 2022.

53.     The Program had approximately 5,800 enrollments in 2021, a decrease of approximately 50% from calendar year 2017.  Of the 5,800 enrollments in 2021, Bisk identified only 139, less than 3%, as corporate group enrollments from a total of 14 companies.  Villanova requested historical corporate enrollments from Bisk to understand performance throughout time and to assess the impact of Bisk's failure to employ a B2B strategy for the Program.  Bisk responded that it was unsure it could provide the information referencing a lack of data integrity.

54.     In February 2022, two years after Bisk dismantled its corporate sales team, Bisk remained unable to present its planned corporate partnership portal or any proposed marketing assets for Villanova's review—despite maintaining that Bisk Amplified would launch in a March or April, which it did not.

55.     In August 2022, Bisk informed Villanova that Bisk Amplified was on hold.  In November 2022, Bisk continued to report that it was working on its revamped B2B strategy.

56.     Despite Villanova's repeated requests for updates and progress, Bisk reported in late December of 2022 that it launched a version of Bisk Amplified that included Villanova's Program without advising Villanova or providing Villanova its contractual right to review the platform before it launched.

57.     Failing to provide Villanova the opportunity to review the platform before it launched is a breach of Section 2.8, which states "Prior approval on Marketing Plan compliance with Brand Guidelines and the Marketing Handbook by the Communication's Representative is required before going to market…Villanova will have the prior right to review and approve of all Marketing and Promotional Materials on a case by case basis."

58.     Bisk Amplified simply provides corporations a personalized site or 'landing page' listing available online courses that Bisk markets for various universities.  Bisk Amplified,

therefore, is neither a true nor complete B2B marketing strategy, and it is not a strategy tailored for Villanova or the Program. Indeed, Bisk Amplified appears to be more about marketing Bisk than the Program.

59.    Moreover, after Villanova reviewed the Bisk Amplified pilot landing pages, launched for only two companies, it identified multiple errors in the pages describing Program courses. Six months later, Bisk has still not fixed the errors and has claimed it cannot because Bisk Amplified's backend system has been down, preventing any changes.

60.    For almost three years, Bisk failed to implement any B2B marketing strategy, let alone a successful one. And now Bisk Amplified, to the extent that it can be called a B2B strategy at all, remains dormant as Bisk is unable to even fix errors in the platform dating back to December 2022, let alone move forward in any meaningful way.

61.    Given the importance of the B2B marketing channel to a certificate program's enrollment success, Bisk's failure violates its contractual obligation to make commercially reasonable marketing efforts and, therefore, Bisk breached Section 2.8(f) of the Agreement. Bisk's failure to put forth the necessary funds and effort to maintain a B2B marketing strategy is also a breach of its obligation under Section 4.4 of the Agreement to "make a substantial and continuing individual investment in the development, marketing and support of the Program during the Term."

62.    Bisk's breaches significantly damaged the Program and Villanova's brand and caused Villanova to lose hundreds of corporate enrollments.

### 2.    Bisk's Failure to Deliver a Functioning E-Commerce Platform

63.    Bisk has failed to deploy a functioning e-commerce platform for the Program in a timely or reasonably competent manner.

64.    For years, Bisk repeatedly indicated that launching an e-commerce solution was a "priority" and that it would positively impact the Program. Notwithstanding its promises and its

acknowledgment of the importance of an effective e-commerce platform to today's prospective student, Bisk did not actually launch an e-commerce platform until January 2021.

65.     When finally launched, Bisk's e-commerce platform suffered from multiple errors and problems, requiring Villanova to devote significant resources of its own to test, identify, and oversee Bisk's corrections to the platform.  The required fixes were numerous and significant, affecting the site's functionality.

66.     In addition to the functional errors, Bisk's e-commerce solution was outdated the moment it launched with multiple and notable shortcomings.  For example, the e-commerce platform only allowed prospective students to enroll if they pay in full via credit card, and failed to provide a method to enroll students utilizing tuition assistance programs or other types of payment plans.  This is a significant limitation considering that on average, less than 40% of students pay for courses with credit cards.  Students unable to pay in full with a credit card, therefore, had to speak with a Bisk enrollment representative, defeating the purpose of an e-commerce solution.  As a result of its significant limitations, e-commerce payments represent approximately a woeful 2% of student payments each year.

67.     Given its limitations, Bisk described its e-commerce platform, which it largely developed in-house, to Villanova as a temporary solution, recognizing its limited ability to deliver a quality user experience.

68.     Despite its promises to replace its home-grown platform with a more sophisticated and functional one, Bisk has failed to update its e-commerce platform or provide any timeline for its replacement.

69.     The failure to employ an adequate e-commerce platform in today's technology driven marketplace cannot be considered commercially reasonable marketing and, therefore,

constitutes a further breach of Section 2.8(f) of the Agreement.  Bisk's failure to invest in and deploy adequate technology to support student marketing and enrollment also is a breach of its obligation in Section 4.4 of the Agreement.

### 3.   Bisk's Failure to Maintain the Program Website

70.   Bisk grossly mishandled the Program website, including the website's migration in 2018 which caused significant damage to the website's search engine optimization (SEO) status.

71.   Despite Villanova's repeated requests for a new Program website since at least 2016, Bisk took years to make the transition.  After finally scheduling the migration to a new website for January/February 2018, Bisk did not launch the new website until December 2018, almost a year later.

72.   The delay negatively and significantly impacted Villanova's marketing efforts, as the website is among the most important tools for prospective student recruitment, particularly for an online program.  Indeed, Bisk admitted at the time that the prior website lacked the full functionality necessary to be nimble and compete in the marketplace.

73.   Following Bisk's migration, Villanova experienced a significant decline in organic Program inquiries.  After asking Bisk about the decreases, Bisk informed Villanova that it failed to properly transition the Program website.  More specifically, in a November 2020 marketing strategy meeting, Bisk's then AVP for Marketing, advised Villanova for the first time that Bisk improperly handled the website migration, causing the Program website's SEO authority to be significantly and negatively impacted.

74.   SEO status refers to a website's visibility in response to internet searches, something the website develops over time.  In other words, when a prospective student searches for certificate programs using Google, Microsoft Bing, and other search engines, how visible Villanova's Program is in response to the searches.

75.     Bisk's error negatively impacted the Program website's SEO status, thus reducing its visibility in internet searches and allowing Villanova's competitors to appear more prominently in search results when prospective students search for online certificate programs and certification courses on the internet.  The Program website's SEO status took years to build up and was lost in minutes because of Bisk's carelessness.  Prospective student leads that come in through these types of internet searches and the Program website's SEO status are valuable to the Program's success as such organic leads convert to enrollments at a higher rate than other types of leads.

76.     As a result, Villanova's organic search leads declined significantly, decreasing from more than 1,250 inbound inquiries per month in June of 2018 to an average of approximately 450 per month in calendar year 2022, a decrease of nearly 65%.  Average monthly organic inbound inquiries to the villanovau.com website still have not recovered to even half of their pre-transition numbers.

77.     Bisk has acknowledged the long-lasting damage its botched migration inflicted on the Program.  Bisk's then Director, Corporate Marketing confirmed in a February 2022 meeting that the Program website still had not recovered from the negative effects of the 2018 migration and the lost SEO status.

78.     Bisk's breach is magnified by the fact that in the years leading up to the botched website migration, Bisk deliberately shifted towards SEO and content marketing.

79.     Bisk's failure to competently manage the Program's website is a breach of Section 2.8(f) of the Agreement.  Its breach has significantly decreased organic Program leads and enrollments, causing damages to Villanova.

80.     At the same time organic search leads plummeted, the Program's paid leads similarly declined from more than 5,000 in July 2018 to a low point of 1,095 in April 2021.  Paid

leads similarly remain depressed to this day, approximately 50% lower than in July 2018 as of January 2023 at approximately 2,200.

81.     Upon information and belief, Bisk also has decreased the amount it has invested in marketing the Program in recent years, including curtailing its investment in paid leads, breaching its contractual obligation in Section 4.4 of the Agreement to make a substantial and continuing investment in the Program.

### 4.     Bisk Has Failed to Institute Commercially Reasonable Marketing Plans and to Perform Adequate Market Research

82.     Overall, Bisk has failed to provide any consistent, viable plan for marketing the Program.  Bisk routinely presents ideas without supporting research, and then fails to follow through with its proposals or withdraws them without reason or support.  The result is a Program left in limbo with no plan for stopping or reversing the decline in enrollments caused by Bisk's breaches.

83.     Bisk regularly recycles previously failed marketing tactics without presenting any research or adjustments that would suggest different or improved results.

84.     For example, between February and April 2021, Bisk unsuccessfully launched a discount program aimed at driving enrollment.  Villanova repeatedly requested an analysis or some report assessing the discount program to learn why it was unsuccessful and how to improve, but Bisk never provided one.

85.     Nonetheless, in September 2021, other Bisk employees mechanically suggested a similar discount campaign, unaware of the prior campaign's failure or that Villanova requested and was still awaiting the analysis of the prior failed campaign.

86.     Bisk never provided the requested analysis of the failed discount program.

87.     When Bisk presented additional discount ideas to Villanova in November 2021, it did not include the requested financial analyses, nor did it have in place the requisite reporting to execute and allow the Parties to move forward effectively or confidently with another large-scale discount program and/or portfolio pricing adjustment.  Given the lack of any analysis, additional discount campaigns in fiscal year 2023 unsurprisingly were unsuccessful.

88.     By way of further example, throughout at least 2021, Bisk repeatedly advised Villanova that market demands indicate the need for shorter, lower-priced courses.

89.     In response, Villanova worked to develop pilot courses consisting of separate pieces of Villanova's Data Visualization course.  Bisk's then Executive Director supported development of the shorter pilot courses.

90.     After Villanova invested in the pilot courses' development, including securing the time and commitment of Villanova faculty, Bisk abruptly changed direction.   Bisk's then Executive Director, informed Villanova that Bisk's marketing department no longer believed that it could effectively market the shortened courses.

91.     Given its wasted investment to develop the shorter courses, Villanova asked Bisk to discuss its recommended strategies cross-functionally prior to future conversations to ensure internal alignment at Bisk.  Bisk never followed-up.  Instead, in November 2021, Bisk stated that it was no longer focusing on shortening courses because it would take significant time, effort, and investment on its part.  Bisk's reasoning is a tacit admission that it was no longer abiding by its covenant to make a substantial investment in the Program.

92.     In October 2021, Bisk suggested moving the Program's website to a Villanova.edu sub-domain to improve the website's organic search results.  Bisk provided no follow-up until months later in February 2022.  Then, in March 2022, Bisk reversed course again, abandoning its

proposed sub-domain strategy and suggesting the opposite—reinvesting in the Program's current website.

93.     Bisk's consistent and sudden changes in tactics prevent, as opposed to provide, a commercially reasonable marketing plan.  Bisk's flipflopping not only undermines any rational confidence in its ability to competently market the Program, but it begs the question whether Bisk is motivated by its bottom line and minimizing marketing costs instead of investing in the Program, in breach of its contractual obligations.  By minimizing its marketing costs and curtailing investment into the Program, Bisk can maintain its profitability amidst falling enrollments.

94.     The instances of Bisk's incompetence are many.  By way of further example, in June 2021, Bisk suggested mailing promotional items to incentivize prospective students to register and to engage more fully during the enrollment process.  Again, Villanova responded by designing and developing tech tattoos for mailing to prospective students.  Again, however, the plan fell apart because Bisk purportedly was unable to identify students to whom to send the tattoos.

95.     Bisk suggested creating a "video message from the Dean" in September 2021, which again Villanova supported.  But again, Bisk failed to follow-up and execute.  The video message never happened.

96.     Bisk routinely has failed to provide requested and actionable market research in a timely manner to Villanova in violation of Section 2.8(f) of the Agreement, which explicitly provides that commercially reasonable marketing efforts "shall include . . . (i) market research and choice of format."  And when Bisk does provide market research reports, the reports lack timeliness and actionable next steps, decreasing or altogether eliminating their utility.

**5.     Bisk Admits It Does Not Use Commercially Reasonable Marketing Methods as Required by the Agreement**

97.     Bisk is aware of and has acknowledged its failure to adequately market the Program consistent with industry standards.

98.     In August 2019, Bisk's then Vice President, Strategic Partnerships, admitted that Bisk's competitors were using more advanced marketing techniques and that Bisk needed to update its approach for Villanova.  When asked why Bisk had not implemented marketing techniques commensurate with its competitors, Bisk's then Vice President conceded that she had the same questions.

99.     In response to an April 2020 email raising Bisk's failure to provide timely marketing research and reports and to follow-up on action items, Bisk's then Director, Client Services wrote: "We recognize the frustration from the delays in research project delivery over the past year (+).  This is disappointing, as this is a valuable team and work that helps us understand the competitive landscape, inform and plan as we look ahead.  We do not want this experience to be the norm for your team or for our growth discussions."  Sadly, Bisk's failure to deliver remains 'the norm.'

100.     In October 2020, after Villanova shared concerns about Bisk's low enrollment projections, Bisk's then Managing Director, Partnerships admitted Bisk has ongoing marketing problems, that its marketing is not being effective, and that Bisk needs new leads.

101.     During a November 2021 presentation to Villanova on Bisk's non-existent B2B marketing efforts, Bisk admitted it had missed many opportunities to communicate, cultivate, and market to corporate clients.

102.     Bisk employees repeatedly have acknowledged Bisk's failure to employ commercially reasonable marketing efforts, breaching its obligations in Sections 2.8 and 4.4 of the

Agreement and, in doing so, has undermined the very purpose of the Agreement from Villanova's perspective.

103.    In sum, Bisk has breached its contractual obligation to "undertake commercially reasonable marketing efforts to, develop, promote, market and sell the Programs" and "to make a substantial and continuing individual investment in the development, marketing, and support of the Program."

104.    Bisk's breaches have significantly damaged Program enrollments and Villanova. Enrollment has declined almost 60% between fiscal years 2017 and 2023 when comparing the same portfolio of courses.   Despite revising its gross revenue projections down by almost $3 million from its original projection, Bisk still failed to achieve its most recent fourth quarter enrollment projection.

105.    The declined enrollments have cost Villanova millions in revenue that it could have invested back into the Program, its students, and its educational mission.   Bisk's breaches have further damaged Villanova because it has required Villanova to invest significant time and resources addressing Bisk's failures and the Program's administration—which is Bisk's obligation under the Agreement.

**B.     Bisk Breached the Agreement by Failing to Fulfill its Billing and Collection Obligations**

106.    Section 2.11 of the Agreement provides that "Bisk shall be responsible for billing and collecting all tuition and other charges and fees relating to the Program."   Bisk has failed to maintain accurate, reliable, and reportable historical financial and other enrollment information and therefore, has breached Section 2.11 of the Agreement, as well as Section 2.14 which requires Bisk to maintain student data.

107.    Bisk has failed to maintain reliable, reportable records related to historical Program revenue and is unable to provide Villanova with reports, even at a summary level, of revenue prior to the second half of 2017.

108.    In January 2021, Villanova asked Bisk for an historical enrollment and revenue summary to analyze Program performance.  After 11 months of back and forth, which required Villanova to explain its request repeatedly and during which Villanova identified multiple errors in draft reports, Bisk finally admitted that it was unable to provide pre-2017 data because it failed to preserve the raw financial data in its computer system.

109.    Bisk's Manager, Partnerships wrote: "Due to a data migration, we only have data from the last half of FY2017.  We have no way to recover the missing data."

110.    Bisk's breach and failure to maintain historical financial data prevents its ability to provide financial reporting or any meaningful analysis of Program performance, which harms the Program.

111.    Moreover, when Bisk reports data that it does maintain, the reporting routinely includes errors.  For example, in December 2021, Bisk's controller notified Villanova that there was a miscalculation in Bisk's monthly financial reconciliation statement that reports Program revenue and the amount due to Villanova under the Agreement's revenue share.  Because of the error, Bisk underpaid Villanova by $50,000.  Because Bisk fulfills the revenue collection and reporting function, Villanova is unable to independently confirm the accuracy of Bisk's monthly financial reconciliation statements and, therefore, must rely on Bisk's reporting.

112.    Sadly, the above error is not an isolated incident.  Bisk has explained that its failure to provide accurate reporting is in part due to its antiquated systems, which often require Bisk to pull from various data sources and then perform manual calculations to generate reporting.  Bisk's

failure to invest in adequate technology and data sources to provide fundamental reporting is a further breach of Section 4.4 of the Agreement.

113.    Bisk's repeated errors call into question the accuracy of its financial reporting and has eroded Villanova's trust in Bisk's financial records, calculations, and reporting.

114.    In 2016, Villanova and Bisk created operational deadlines for Bisk to deliver quarterly year-end projections that align with the dates by which the Villanova programs must submit projections internally to the University's budget office.

115.    For years, Bisk has consistently delivered these projections late, by weeks if not months, and with multiple computational errors.  For example, Bisk's projections for fiscal year 2023 Q1, Q2, Q3, and Q4 contained multiple computational errors, which required Villanova to correct them. Bisk's fiscal year 2024 forecast was no different, also containing multiple errors.

116.    Bisk's projections also are woefully inaccurate.  For example, fiscal year 2022 total revenue was $4.4 million less than Bisk's initial projections—a partial demonstration of the damage that Bisk's breaches have caused to the Program and Villanova.

117.    The above represents but a few examples of Bisk's repeated failures to provide timely and accurate financial, budgeting, and other information that Bisk is obligated to maintain and provide to Villanova under the Agreement.

118.    Bisk has also failed to abide by the Parties' agreed upon procedures for billing and collections.  In 2018, Villanova and Bisk had agreed that Bisk would not accept course payment more than 30 days in advance of the start of a course.  Accepting pre-payments too far in advance of course start dates can create administrative issues and the need to refund tuition to students if available courses change over time.

119.    Unbeknownst to Villanova, and contrary to the Parties' understanding, Bisk continued to accept pre-payments for courses more than 30 days prior to a course's start date following the Parties agreement not to do so.

120.    When Villanova discovered and raised to Bisk its failure to implement the proper and agreed upon billing procedure, Bisk indicated it would look into the issue, but then took three months to respond with a limited and insufficient explanation.  Again, Bisk's failure to follow the no pre-payment billing procedure reflects its desire to collect revenue over what is best for the Program and its students.

121.    Moreover, any collected pre-payments reflect a liability for Villanova (and Bisk) and, therefore, must be understood and monitored by Villanova.  Bisk's failure to notify Villanova of its acceptance of such payments, therefore, is unacceptable.

122.    Since at least February 2021, Bisk has been unable to provide Villanova reporting on the total number of pre-payments or the total dollar amount of the pre-payments Bisk has collected from students for future enrollments and, instead, has indicated that it is unable to do so given the limitations of its financial system.

123.    In sum, Bisk has breached Sections 2.11 and 2.14 of the Agreement by failing to maintain and provide accurate financial records related to student enrollment, failing to provide timely and accurate needed financial reporting and budgeting, and failing to implement and maintain agreed upon billing standards.

124.    Bisk also regularly fails to provide timely and accurate reporting to Villanova of other student data in breach of Section 2.14 of the Agreement.  Indeed, Villanova has requested multiple reports from Bisk that it either has failed or has been unable to provide for more than a year.  Bisk's inability to provide such reporting: (i) hinders the Program's ability to effectively

market to those who have completed the Program, a further breach of Section 2.8 of the Agreement which requires Bisk to use commercially reasonable efforts to market the Program; and (ii) hinders Villanova's ability to contact and maintain a relationship with its prior students.  Contrary to Bisk, the Program is not a strictly financial endeavor for Villanova.  A key aspect of Villanova's mission is to create a diverse community of scholars, united and dedicated to the highest academic standards.  Bisk's breach frustrates Villanova's ability to fully develop and maintain that community and to fulfill its educational mission.

125.    Bisk representatives have blamed Bisk's antiquated, home-built system and its failure to transfer data to its new third-party vendor as at least part of the reason for its inability to provide basic and accurate reporting.  In a February 2022 email, Bisk's then Manager, Partnerships conceded, "if I am honest, one of the challenges of working with the Bisk LMS is that the people who created and maintained the system no longer work at Bisk.... [W]orking in a retired system with no one to teach it has its challenges."

126.    Bisk's failure to invest in and maintain technology that allows it to adequately store and report on student and financial data also is a breach of its obligation in Section 4.4 of the Agreement to make a substantial and continuing investment in the Program.

127.    Its breaches have harmed the Program and have imposed significant costs on Villanova to address and correct Bisk's errors and failures and to perform administrative functions for which Bisk is responsible under the Agreement.

C.    **Bisk Breached the Agreement by Failing to Provide a Consistent Team and Leadership for the Program and Partnership**

128.    Bisk has failed to invest in and to provide Villanova a consistent team capable of fulfilling Bisk's obligations under the Agreement, including client services, marketing, finance and accounting, and student recruitment and interaction.

129.    Bisk's refusal or inability to provide a capable team to fulfill the Agreement's purpose is a breach of the Agreement, including a breach of Section 4.4 which requires Bisk to "make a substantial and continuing individual investment in the development, marketing and support of the Program during the Term."

130.    Bisk has failed to provide any consistent leadership for the Program and Villanova. To the contrary, Bisk's leadership team, purportedly responsible for overseeing the Program and Villanova's relationship, has been subject to repeated and excessive turnover and, therefore, has lacked the coherency and consistency necessary to fulfill Bisk's Agreement obligations.

131.    In recent years, Bisk has assigned and replaced key leadership positions needed for the Program every few months.  For example, between November 2019 and May 2023, Bisk assigned six different individuals to head the partnership.  Between January 2018 and May 2023, Bisk assigned nine different individuals to lead the marketing function.  Other Bisk team members responsible for the Program also have suddenly left, some whom Bisk replaced and some whom Bisk did not replace at all.

132.    With each replacement, there is no retention of prior issues and action items, leaving the Program in limbo and decline.  Amidst the continual changes in Bisk's teams, responsibility for tangible projects evaporates, leading to significant delays and uncompleted deliverables, all of which hamper the Program's ability to properly function and to remain competitive in the market.

133.    For example, Bisk has had continuous and significant turnover in its accounting staff, and as a result, has failed to provide timely and accurate financial reporting.

134.    In a February 2022 email response to Villanova's requests for past due financial reporting, Bisk's Interim Controller, stated "I am very new, and Jacqui is in charge of completing

26

the reconciliations and teaching me more than I can handle right now.  Sorry that was missed.

There has been a lot of transition here in Accounting at Bisk….”

135.    Incredibly, Bisk did not inform Villanova about the departure of its controller until

after Villanova inquired about the tardy financial reporting.  Bisk regularly fails to inform

Villanova leadership of key Bisk personnel changes until after they have occurred.

136.    Bisk’s officers and employees have admitted Bisk’s failures to meet its obligations

under the Agreement.

137.    In a November 2019 discussion with Bisk’s owner, Michael Bisk, and Bisk’s then

Chief Corporate Advisor, Mr. Bisk conceded to Villanova that Bisk’s performance has not been

where it needs to be and recognized the need to reinvigorate areas having problems.  Mr. Bisk

further assured Villanova that no other reorganizations were planned.  A few months later, in

February 2020, Bisk laid off more than 35 employees (approximately 9% of its workforce), and in

March 2020, there was significant turnover in Bisk’s C-Suite.

138.    Given Bisk’s layoffs and its then existing failures to fulfill its obligations under the

Agreement, Villanova questioned Bisk’s ability to service Villanova’s account and to fulfill its

obligations under the Agreement with a significantly smaller workforce.  In response to

Villanova’s concern, Bisk’s then newly appointed leader of Marketing and Learning Design

responded illogically that fewer people would do 80% more work.  He further acknowledged that

Bisk has been trying for years to improve quality and to act like a modern organization in 2020.

Bisk’s then Vice President, Enrollment and Student Support was also on the call and affirmed the

comments, adding that Bisk would own the sins of the past.

139.    Despite Bisk’s acknowledgements and promises to cure, Bisk continued failing its

obligations under the Agreement.

140.    In a November 2020 meeting, Bisk's then Director, Partnerships conceded that Bisk needs a higher level of accountability and urgency and to accelerate our progress and improve efficiencies.

141.    On a September 2021 call, Villanova again expressed frustration with Bisk's failure to perform its contractual obligations, and Bisk's then Vice President, Partnerships acknowledged Bisk's unacceptable performance, stating that Bisk got too far behind for too long and now it is taking time to catch up.

142.    In October 2021, Bisk's then Director, Partnerships explained the internal issues Bisk had with its computer systems, noting that Bisk had legacy systems, but they were flawed; Bisk reorganized them, is trying to fix them and solve for them, but it is very manual and all over the place.

143.    Bisk's breach and its failure to invest in and to provide Villanova a consistent team capable of fulfilling Bisk's obligations under the Agreement has damaged the Program and caused Villanova damages.

144.    First, Bisk's failure to provide consistent leadership and a coherent team have prevented any effective marketing plan or strategy for the Program, causing a drop in enrollments.

145.    Second, Bisk's lack of leadership and a coherent team have prevented Bisk from competently fulfilling its administrative obligations under the Agreement, requiring Villanova personnel to fill the void.  Villanova, therefore, has had to divert its resources, often University leadership, from other important University functions to ensure administrative tasks that are Bisk's responsibility under the Agreement (and for which Bisk collects 70% of Program revenue) are completed accurately or at all.  This imposes significant additional cost on Villanova and prevents Villanova from receiving the benefit of its bargain.

146.    In sum, Bisk's failure to provide the leadership and the supporting team necessary to competently perform its responsibilities under the Agreement is a breach of its contractual obligation to invest in the Program and defeats the Agreement's purpose.

**D.      Bisk Breached the Agreement by Failing to Effectively and Professionally Communicate with Prospective Students**

147.    Section 2.9 of the Agreement provides that "Bisk shall be responsible for communications with prospective students.  Bisk shall be responsible for registering the students into the PLMS [proprietary learning management system]."

148.    Bisk has breached Section 2.9 by failing to adequately train, supervise, and retain enrollment representatives responsible for interacting with prospective and current Program students.  Bisk's breach has caused Villanova to expend significant time and work responding to correcting Bisk's wrongful conduct.

149.    Bisk's failure to invest in the proper training and behavior of its enrollment representatives also breaches Section 4.4. of the Agreement.

150.    Not only has Bisk drastically reduced the number of Program dedicated enrollment representatives, records of interactions between Bisk's enrollment representatives and prospective and/or current students show Bisk making careless errors, providing poor customer service, and engaging in unprofessional conduct, all which tarnishes Villanova's brand and image.

151.    Bisk's enrollment representatives have also engaged in wholly unprofessional and unacceptable conduct with current and prospective students, including using vulgar and unprofessional language; demeaning the educational value of Program certificates by calling it "great eye candy" for a resume; making unsolicited political comments during calls with prospective students; and repeatedly making sloppy and embarrassing mistakes.  All the above conduct damages Villanova's reputation and brand.

152.    Demonstrating the damage to Villanova's brand and image, Villanova has received numerous complaints about Bisk from prospective and Program students, lamenting Villanova's affiliation with Bisk given its lack of professionalism, responsiveness, and competency.

153.    For example, a professor at another prestigious university, who inquired about the Program as a prospective student, complained about "multiple emails, daily phone calls, etc." after informing Bisk that he was not interested in the Program.  The professor wrote: "I should be able to contact another institution for information and receive it in an informative, thoughtful [manner] and not in a fashion more consistent with used car sales and telemarketing.  Villanova University has a long and storied tradition, and to associate yourselves with an obviously for-profit tele-education company, that participates in harassment and badgering in an attempt to gain business is simply not consistent with your reputation."

154.    Another student posted the following to the Better Business Bureau (BBB) website:

> I became acquainted with Bisk as part of three on-line certificate programs (Green Belt, Black Belt and Lean) with Villanova University.  The Villanova instructors were fantastic-I have no quarrel with them.  Following the courses in Lean Six Sigma, I registered with Bisk to take the Villanova Certification Exam for Six Sigma Black Belt.  I took the exam, passed it, and was sent a copy of my grades.  What I needed was a certificate.  Time and again over a four month period, I spoke with customer service asking only for the certificate, which I needed for new employment documentation purposes.  I was told it was accessible on-line.  It was not.  After forking over some $7,395.25 for the course work, providing the promised certificate seemed a small thing to ask.  Finally, today in desperation I looked up Bisk on the BBB site.  I found a D- score and multiple complaints.  I called Bisk one last time and told them that I was considering filing report on the BBB site because customer service was truly unresponsive in any substantive way.  Five minutes later, an employee sent the certificate to me as an email attachment.  Unbelievable.  They are tarnishing the reputation of a great University.  Villanova deserves better.  Its students deserve better.

155.    Villanova has repeatedly raised to Bisk the unacceptable behavior of its enrollment representatives, but their failures persist.  Villanova also has requested to review Bisk's training materials for its enrollment representatives, and Bisk refused to provide them asserting that they are proprietary and that Villanova is not entitled to review them under the Agreement.  Given the Agreement's confidentiality provisions, Bisk's refusal raises serious questions about the existence and content of its purported training materials for enrollment representatives.

156.    The Bisk enrollment representatives' actions and Bisk's failure to invest in, sufficiently train and monitor their behavior breach Bisk's obligations under Sections 2.9 and 4.4 of the Agreement and have caused significant damage to Villanova.

157.    First, Bisk's breaches and its enrollment representatives' unprofessional, incompetent conduct and poor customer service damage the Program's brand and image, resulting in lost enrollments.

158.    Second, Bisk's breaches and its enrollment representatives' unprofessional, incompetent conduct and poor customer service require significant time and work by Villanova to respond to and investigate complaints, address the situation with the affected students or prospective students, and attempt to mitigate Bisk's wrongful conduct.

159.    Indeed, Villanova personnel have had to expend significant time training Bisk's enrollment representatives on proper policies and standards of professionalism.  Again, because of Bisk's breach, Villanova has had to divert its resources from other important University functions to address administrative tasks that are Bisk's responsibility under the Agreement (and for which Bisk collects 70% of Program revenue).  This imposes additional cost on Villanova and prevents Villanova from receiving the benefit of its bargain.

## VILLANOVA NOTIFIED BISK OF ITS BREACHES BUT TO NO AVAIL

160.    After repeated unsuccessful attempts to cause Bisk to correct its failures and cure its breaches, Villanova was left with no other choice but to send Bisk a notice of default and intent to terminate the Agreement.  On May 5, 2022, Villanova sent Bisk a 17-page letter setting forth Bisk's breaches in detail.  Given Bisk's replete failure to satisfy its obligations under the Agreement, Villanova stated its intent to terminate the Agreement in accordance with Section 5.2(e).

161.    Unsurprisingly, Bisk failed to cure any of its breaches within the required 30-day cure period provided for in Section 5.2(e) of the Agreement, or in the year that has followed.  Instead, Bisk's breaches have continued and grown.

162.    Bisk's leadership team has continued to have a disturbing amount of turnover as the last year saw Bisk lose four C-Suite employees, including its Chief Financial Officer, and its Senior Vice Presidents for Partnerships, Marketing and Partner Success. Other Bisk Team members responsible for the Program have also departed Bisk's team, including Bisk's Director, Corporate Marketing, its Director of University Partnerships, its Partnership Manager, its Associate Vice President Technology Management, and its Sr. Manager, Learning Technology & Engagement.

163.    Bisk also has outsourced key marketing functions that it is obligated to perform to third parties without providing Villanova its contractual right to review and approve the third-party contracts.  An April 5, 2017 Memorandum of Understanding amending the Agreement provides that "Bisk shall not enter into any contracts or agreements relating to the Programs with other corporate customers, organizations, or associations for the delivery of the Programs . . . without the prior written approval of the Provost of Villanova."  Bisk's failure to even notify Villanova of the third-party agreements, therefore, breaches the Agreement.

32

164.    Issues have continued with Bisk's e-commerce platform, which continues not to provide the level of service needed and expected by prospective and Program students in today's marketplace.

165.    In May 2022, Bisk made changes to its e-commerce platform without advising Villanova.  The changes caused several problems affecting the functionality of the e-commerce platform that Villanova identified for Bisk.  After Villanova identified the problems to Bisk, it took months, until August 2022, for Bisk to fix the problems.  Even then, the only reason Bisk corrected the problems was because Villanova conditioned its approval of a September 2022 discount promotion on the completion of the e-commerce platform fixes—again, demonstrating that the only thing that apparently motivates Bisk is revenue generation.

166.    Bisk has continued to recycle and flip-flop on suggested marketing tactics.  In March 2023, Bisk again suggested creating shorter courses.  Bisk initially suggested the same in 2021, then reversed course, telling Villanova that it was no longer shortening courses.  More than a year later, Bisk has done another 180-degree shift, again recommending shortened courses. Bisk's marketing approach, to the extent it has one, is the opposite of a consistent, coherent strategy.

167.    In November 2022, Bisk's newly hired Vice President of Marketing arrived and conceded that consumers' expectations have changed and that Bisk's approach to marketing has not changed with them.  He further stated that Bisk needs a more diversified media mix and an omni-channel approach and needs to do a better job telling the Program's story.

168.    During a May 2, 2023 call, Villanova again addressed its ongoing concerns regarding Bisk's marketing, and Bisk's new marketing leadership conceded that they are

uncovering a level of dysfunction and incompetence at Bisk that the new marketing leadership is trying to fix.

169.    Bisk continues to provide late and inaccurate financial and other reporting to Villanova.

170.    Bisk's enrollment representatives have substantially decreased in numbers further demonstrating Bisk's failure to invest in the Program and its breach of Section 4.4 of the Agreement.    The decrease in Bisk enrollment representatives is particularly concerning considering Bisk does not have a competent and effective e-commerce platform.

171.    In sum, Bisk has breached the Agreement in multiple ways.  Its breaches are replete and have damaged the Program and Villanova.  Bisk's breaches have caused Program enrollments to plummet.  Enrollment has declined more than 60% between fiscal years 2017 and 2023 when comparing the same portfolio of courses.  Despite revising its gross revenue projections down by almost $3 million from its original projection, Bisk still failed to achieve its most recent fourth quarter enrollment projection.

172.    The declined enrollments have cost Villanova millions in revenue that it could have invested back into the Program, its students, and its educational mission.

173.    Bisk's breaches have further damaged Villanova because it has required Villanova to invest significant time and resources addressing Bisk's failures and addressing the Program's administrative functions—which are Bisk's obligation under the Agreement.

174.    Bisk's repeated failures deprive Villanova of the benefit which it expected under the Agreement and substantially defeats the Agreement's purpose.

175.    Individually, and certainly collectively, the above breaches constitute Bisk's failure to perform a substantial part of the contract and/or one or more of its essential terms or conditions.

Bisk, therefore, has materially breached the Agreement as defined in Section 5.2(e) of the Agreement.

## FIRST CAUSE OF ACTION
(Breach of Contract)

176.    Villanova repeats and realleges each of the foregoing paragraphs of their Complaint as if fully set forth herein.

177.    Bisk has failed to make "commercially reasonable marketing efforts to, develop, promote, market and sell the Programs" and, therefore, has breached Section 2.8(f) of the Agreement.

178.    Bisk's breaches are numerous and pervasive and include, but are not limited to, failing to provide an effective, or at times any, B2B marketing plan—an essential element of a certificate program marketing plan as corporate employees are a key source of potential students; failing to deploy an effective and adequate e-commerce platform for the Program in a timely or reasonably competent manner; failing to properly maintain the Program's website causing a loss of SEO status and diminishing the Program's competitiveness and visibility to prospective students; failing to provide any consistent, viable plan for marketing the Program; failing to present marketing tactics supported by competent research and failing to follow through with marketing proposals and opportunities; failing to invest in marketing the Program; and failing to market the Program consistent with industry standards.

179.    Bisk's failures to make the necessary investment to adequately market the Program, including, but not limited to, its failure to invest in an effective e-commerce platform and to develop a B2B marketing strategy, breaches its obligation under Section 4.4 of the Agreement to "make a substantial and continuing individual investment in the development, marketing and support of the Program during the Term."

35

180.    Bisk's breaches of Sections 2.8 and 4.4 of the Agreement have significantly damaged Program enrollments and Villanova.  The declined enrollments have cost Villanova millions in revenue that it could have invested back into the Program, its students, and its educational mission.  Bisk's breaches of Sections 2.8 and 4.4 of the Agreement have further damaged Villanova because it has required Villanova to invest significant time and resources addressing Bisk's failures and addressing the Program's administration—which is Bisk's obligation under the Agreement.

181.    By failing to maintain accurate, reliable, and reportable historical financial data and other Program information, Bisk has breached Section 2.11 which provides that "Bisk shall be responsible for billing and collecting all tuition and other charges and fees relating to the Program" and Section 2.14 which requires Bisk to maintain student data.

182.    Because of its breaches and failure to maintain the financial data, Bisk is unable to provide Villanova with financial reporting prior to the second half of 2017.

183.    Bisk also has breached Sections 2.11 and 2.14 of the Agreement by failing to maintain and provide accurate financial records related to student enrollment, failing to provide timely and accurate financial reporting and budgeting, and failing to implement and maintain agreed upon billing standards, including accepting course payments more than 30 days in advance of the start of a course in violation of the Parties' agreed upon procedures for billing and collections.

184.    Bisk's failure to invest in and maintain technology that enables it to adequately store and report on student and financial data is a further breach of Section 4.4 of the Agreement.

185.    Bisk's breaches of Sections 2.11 and 2.14 and have harmed the Program and have imposed significant costs on Villanova to address and correct Bisk's errors and failures and to perform administrative functions for which Bisk is responsible under the Agreement.

186.    Bisk has failed to invest in and to provide Villanova a consistent team capable of fulfilling Bisk's obligations under the Agreement, including client services, marketing, administration, finance and accounting, and student recruitment and interaction.  Bisk's refusal or inability to provide a team capable of fulfilling its obligations under the Agreement is a fundamental breach of the Agreement that destroys the Agreement's purpose and deprives Villanova the benefit of its bargain.  In addition, Bisk's failure to invest in and provide Villanova a consistent, capable team is a breach of Section 4.4 of the Agreement, which requires Bisk to "make a substantial and continuing individual investment in the development, marketing and support of the Program during the Term."

187.    Bisk's leadership, marketing, and accounting teams, as well as other Bisk personnel responsible for the Program, effectively have been revolving doors.  The excessive turnover results in no consistent or coherent strategy, plan, or administrative operability for the Program. Responsibility for key administrative functions, for addressing issues and action items, and for tangible projects evaporates, leading to significant delays and uncompleted deliverables.  Bisk's inability to deliver a capable team prevents the Program's success and competitiveness in the market.

188.    Bisk's breach and its failure to invest in and to provide Villanova a consistent team capable of fulfilling Bisk's obligations under the Agreement has damaged the Program and caused Villanova damages, including lost enrollments and additional incurred costs and expended

University resources to address Bisk's failures and complete Bisk's administrative obligations under the Agreement.

189.    By failing to adequately train, supervise, and retain enrollment representatives responsible for interacting with prospective and current Program students, Bisk has breached Section 2.9 of the Agreement, which provides that "Bisk shall be responsible for communications with prospective students.  Bisk shall be responsible for registering the students into the PLMS [proprietary learning management system]."

190.    Bisk's failure to invest in the proper training and behavior of its enrollment representatives also breaches Section 4.4. of the Agreement.

191.    Not only has Bisk drastically reduced the number of Program dedicated enrollment representatives, but its representatives also regularly make careless errors and engage in unprofessional conduct that harms Villanova's brand and negatively impacts its enrollments.

192.    Bisk's enrollment representatives have also engaged in wholly unprofessional and unacceptable conduct with current and prospective students, including using vulgar and unprofessional language; demeaning the educational value of Program certificates by calling it "great eye candy" for a resume; making unsolicited political comments during calls with prospective students; and repeatedly making sloppy and embarrassing mistakes.

193.    Bisk's breaches of Sections 2.9 and 4.4 of the Agreement's obligations have caused significant damage to Villanova.  Bisk's breaches damage the Program's brand and image, resulting in lost enrollments, and impose additional costs on Villanova, requiring the University to expend time and resources to respond to and investigate complaints, address the situations with the affected students or prospective students, and attempt to mitigate Bisk's wrongful conduct.

194.    Individually, and certainly collectively, Bisk's above breaches constitute a failure to perform a substantial part of the contract and/or one or more of its essential terms or conditions. Bisk, therefore, has materially breached the Agreement as defined in Section 5.2(e) of the Agreement.

195.    Bisk's breaches go to the essence of the Agreement and have deprived Villanova of the benefit of its bargain under the Agreement.

196.    Bisk's breaches reasonably have caused Villanova to lose all trust in Bisk to perform under the Agreement.

197.    Every contract in the Commonwealth of Pennsylvania has within it an implied covenant of good faith and fair dealing.  This means that Bisk must act in good faith and deal fairly with Villanova in performing the terms of the Agreement.

198.    To act in good faith and deal fairly, Bisk must act in a way that is honest and faithful to the agreed purposes of the Agreement and consistent with the reasonable expectations of the Parties.  Moreover, Bisk must not act dishonestly, or with improper motive to destroy or injure Villanova's right to receive the benefits or reasonable expectations of the Agreement.

199.    As noted above, Bisk has failed to act in good faith, deal fairly, or act in an honest and faithful manner to achieve the Agreement's agreed purpose.  To the contrary, it has failed to contribute sufficient time, money, resources, and efforts to perform its obligations under the Agreement with any degree of competency.

200.    Bisk further has failed to act in good faith by willfully rendering less than satisfactory performance of its obligations under the Agreement and failing to cooperate and work in good faith with Villanova for the Program's benefit.  To the contrary, Bisk's knowing breaches have frustrated the fundamental purpose of the Agreement.

201.    Bisk's conduct is inconsistent with Villanova's reasonable expectations of the Agreement and has caused monetary and reputational damages to Villanova.  Accordingly, Villanova is entitled to damages because of Bisk's breach of the implied covenant of good faith and fair dealing.

202.    In accordance with Section 5.2(e), Villanova provided Bisk a detailed notice of its breaches.  Bisk, however, failed to cure and instead denied its failures.

203.    As a direct and proximate cause of Bisk's breaches of the Agreement, Villanova has sustained and continues to sustain significant reputational and monetary damages.

204.    Villanova's damages include revenue from lost enrollments, costs incurred by Villanova to address and mitigate Bisk's breaches and to ensure performance of Program administrative functions that are Bisk's obligations under the Agreement, and its attorneys' fees and costs, in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
(Declaratory Judgment)

205.    Villanova repeats and realleges each of the foregoing paragraphs of their Complaint as if fully set forth herein.

206.    A live and justiciable controversy exists as to whether Bisk is in material breach of the Agreement and Villanova has the right to terminate the Agreement pursuant to Section 5.2(e) of the Agreement.

207.    Section 5.2(e) provides:

> This Agreement may be terminated by either party upon a material breach of the Agreement by the other party, provided, however, that the non-breaching party will provide the breaching party with a written notice of default, stating any remedies it intends to seek if such default is not cured, and provided, further, that on receipt of such notice, the breaching party will have thirty (30) days to cure the default.  Upon such termination, or upon termination by mutual consent or by a court order, the parties will follow termination

procedures in Sections 5.2(b), 5.2(c).  Material breach is defined as a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach of contract as substantially defeats its purpose.

(emphasis added).

208.    Bisk has materially breached the Agreement, including Sections 2.8, 2.9, 2.11, 2.14, and 4.4, frustrating the Agreement's purpose and depriving Villanova the benefit of its bargain.

209.    Individually, and certainly collectively, Bisk's breaches constitute Bisk's failure to perform a substantial part of the Agreement or one or more of its essential terms or conditions. Bisk, therefore, has materially breached the Agreement as defined in Section 5.2(e) of the Agreement.

210.    In accordance with Section 5.2(e), by letter dated May 5, 2022, Villanova provided Bisk notice detailing Bisk's breaches and defaults of its obligations under the Agreement.

211.    Bisk, however, failed to cure its breaches and defaults and, instead, denied its failures.

212.    Bisk further has denied that it is in material breach of the Agreement and has continued to hold Villanova hostage with its poor performance and refusal to competently perform its contractual obligations under the Agreement.

213.    Villanova, therefore, is entitled to a declaratory Judgement that Bisk is in material breach of the Agreement and that Villanova, therefore, has the contractual right pursuant to Section 5.2(e) of the Agreement to terminate the Agreement immediately.

### THIRD CAUSE OF ACTION
(Breach of Contract – Indemnification)

214.    Villanova repeats and realleges each of the foregoing paragraphs of their Complaint as if fully set forth herein at length.

215.    Section 8.1(b) of the Agreement requires Bisk to:

[I]ndemnify and hold Villanova harmless from and against any loss, damage or expense (including without limitation, reasonable fees of attorneys and legal assistants including before, during and after trial, on appeal, or in bankruptcy, administrative or arbitration proceedings) suffered by either party resulting from (a) any material breach by Bisk of this agreement; (b) any inaccuracy in or breach of any of the representations, warranties or covenants made by Bisk to this agreement; (c) any personal injury or property damage claims, including claims of misrepresentation associated with any Program, based on the alleged acts or omissions of Bisk or its employees, officers, contractors or agents, or (d) any claims that Bisk's intellectual property infringes on any intellectual property rights of any third party.

216.   Bisk has materially breached the Agreement and multiple of its covenants to Villanova, including its covenants in Sections 2.8, 2.9, 2.11, 2.14, and 4.4, frustrating the Agreement's purpose and depriving Villanova the benefit of its bargain.

217.   Individually, and certainly collectively, Bisk's breaches constitute Bisk's failure to perform a substantial part of the Agreement or one or more of its essential terms or conditions. Bisk, therefore, has materially breached the Agreement as defined in Section 5.2(e) of the Agreement.

218.   In accordance with Section 5.2(e), by letter dated May 5, 2022, Villanova provided Bisk notice detailing Bisk's breaches and defaults of its obligations under the Agreement.

219.   Bisk, however, failed to cure its breaches and defaults and, instead, denied its failures.

220.   Bisk also has failed to indemnify and hold Villanova harmless from and against Villanova's losses, damages, or expenses resulting from Bisk's material breaches and the breach of its covenants in the Agreement.

221.   Bisk's material breaches have caused Villanova to incur losses, damages, and expenses, including, but not limited to, revenue from lost enrollments, costs and expenses incurred by Villanova to address and mitigate Bisk's breaches and to ensure performance of Program

administrative functions that are Bisk's obligations under the Agreement, attorneys' fees and costs, and other costs, in amounts to be proven at trial.

222.    Pursuant to Section 8.1(b) of the Agreement, Bisk must indemnify for Villanova's losses, damages, and expenses caused by Bisk's material breaches and the breach of its covenants in the Agreement.

223.    As a direct and proximate cause of Bisk's breach of Section 8.1(b), Villanova suffered damages in an amount to be proven at trial.

224.    Villanova's damages include revenue from lost enrollments in an amount to be determined at trial.  Villanova's damages further include the costs, in an amount to be proven at trial, incurred by Villanova to address and mitigate Bisk's breaches and to ensure performance of Program administrative functions that are Bisk's obligations under the Agreement, together with attorney's fees, costs, and such other legal and equitable relief the Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Villanova respectfully requests this Honorable Court enter an order and judgment:

(a)    finding that Bisk breached the Agreement;

(b)    finding and declaring that Bisk has materially breached the Agreement and, therefore, Villanova is entitled to terminate the Agreement immediately;

(c)    finding that Bisk breached Section 8.1(b) of the Agreement;

(d)    awarding Villanova damages in an amount to be determined at trial;

(e)    awarding Villanova its attorneys' fees and costs; and

(f)    awarding Villanova such other relief that the Court deems just and proper under the circumstances.

## <u>JURY DEMAND</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Villanova hereby demands a

trial by jury on all triable issues.


Dated: May 26, 2023

<u>*/s/Daniel J. Boland*</u>
Michael Baughman, Attorney I.D. No. 78690
Daniel J. Boland, Attorney I.D. No. 91263
**TROUTMAN PEPPER HAMILTON**
**SANDERS LLP**
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000
michael.baughman@troutman.com
daniel.boland@troutman.com
*Attorneys for Plaintiff*
*Villanova University*